Susan Lynn Mimura
V. Renee Karel
Danielle M. Evans
SUSAN LYNN MIMURA & ASSOCIATES, PLLC
Attorneys at Law
3451 E. Copper Point Drive, Suite 106
Meridian, Idaho 83642
Telephone: (208) 286-3140
Facsimile: (208) 286-3135
Idaho State Bar No. 3033, 9050, 10366
Email: SLM@idahoattys.com

*Attorneys for the Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **JEREMY MATTSON,**<br><br>Plaintiff,<br><br>vs.<br><br>**ARON STREIBEL, DANIEL VOGT, CITY OF CALDWELL, AND JOHN DOES 1-15.**<br><br>**Defendant.** | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMES NOW,** the Plaintiff, JEREMY MATTSON, by and through his attorney of record, SUSAN LYNN MIMURA, of the firm SUSAN LYNN MIMURA & ASSOCIATES,

PLLC, and complains against the above-named and to-be named Defendants, for causes of action as follows:

## PARTIES

1. Plaintiff JEREMY MATTSON is and has been for more than the last six months a resident of Ada County, Idaho;

2. Defendant ARON STREIBEL ("Streibel") for all times alleged herein is an individual, residing in Idaho, and was a Caldwell City police officer acting within the course and scope of his duties as such for the City of Caldwell, a political subdivision of the State of Idaho;

3. Defendant DANIEL VOGT ("Vogt") for all times alleged herein was a duty sheriff for the Canyon County Sheriff's Office acting within the course and scope of his duties for Canyon County, a political subdivision of the State of Idaho;

4. Defendant CITY OF CALDWELL for all times alleged herein is a municipality, a political subdivision of the State of Idaho, located in Canyon County, Idaho, which employed Defendant Streibel.

## JURISDICTION AND VENUE

5. The amount in controversy exceeds $10,000.00. The alleged constitutional deprivations are brought pursuant to 42 U.S.C. §§1983 and 1988;

6. Jurisdiction is proper under 28 U.S.C. §§1331 and 1343(3); and supplemental jurisdiction under §1367.

7. The state tort claims are proper for pendant jurisdiction.

8. The acts alleged herein took place in the State of Idaho;

9. All of the parties reside and are located in the State of Idaho.

## FACTUAL/PROCEDURAL HISTORY

10. According to the police reports, videotape, audiotapes, and statements gathered:

    a. The incident arises due to warrants for failure to appear for Plaintiff in Ada County, Idaho.

    b. On March 14, 2020, at approximately 12:50 PM, it is alleged by law enforcement that Jeremy Mattson was seen driving at a high rate of speed in a black Ford Fusion in the area of Middleton headed north on Old Hwy 30 towards Payette and Gem County. Approximately two hours later, at 3:00 p.m., the empty vehicle was found north of Middleton and Sand Hollow area near a secluded radio tower.

    c. The terrain surrounding the tower was dry, ranging in elevation, with minimal vegetation, and the building and tower itself was surrounded by a transparent chain link fence. The dimensions of this fence are approximately 100' by 100' with the structure along the South fence line.

    d. Before approaching the scene Idaho State Police (ISP) utilized drone technology to locate Jeremy Mattson. At this time, Jeremy Mattson was asleep in the middle of the fenced off lot containing the radio tower, approximately 150' away from his vehicle parked outside the chain linked fence. Drone video shows Mattson asleep, but moving, near the base of the radio tower. Mattson is seen wearing a white tee shirt, loose fitting pants, a belt, and socks, but no shoes.

e. Police from the Gem County Sheriff's Office, Caldwell Police Department, Canyon County Sheriff's Office, Meridian Police Department, and ISP were present. There were approximately a total of 15 uniformed officers present at the time of the arrest of one Jeremy Mattson.

f. Jeremy Mattson was asleep but slight movement was reported by one officer operating one of the drones.

g. Jeremy Mattson was at all times relevant to the seizure by law enforcement that day, unarmed.

h. Even though the officers at the scene were informed by one the officers present and viewing Jeremy lying face down on the ground, apparently asleep, alone and without any evidence of a weapon of any sort, in order to "life check" Jeremy Mattson, Defendant Streibel was instructed by Defendant Vogt to deploy impact munitions on Mattson; ie shoot him to see if he's alive.

i. After Jeremy Mattson was shot by Defendant Streibel with a 40 mm eXact iMpact round to the left hip area. Mattson abruptly awoke experiencing a sharp, fire-like pain. He rolled further towards the middle of the lot thinking that his pants were on fire, and became aware of the several officers present when he heard instructions to lie on his stomach with his arms extended above his head. He complied and was then ordered to stand slowly, lift his shirt by the collar, and spin in a circle to determine if he was armed. From the drone video one can clearly see his waist line and pockets with no weapon present. He was then ordered to again lie on his stomach until the gate to the enclosed area was open.

j.  Six officers and a K9 approached the gate. At this time Mattson was clearly visible (still on his stomach) yet there were four officers with weapons drawn at the gate, one officer with a barking K9 a yard from the gate, one officer with his weapon drawn four yards from the gate, an armed officer mounted in the armored vehicle, and a sniper team all trained on Mattson.

k.  Using bolt cutters to open the gate while Mattson was lying faced away from the gate, the gate was opened. Mattson was instructed to stand with fingers interlocked on the back of his head and walk to the right and backwards on uneven ground until he was outside of the enclosed area, almost losing his balance several times. At this point Defendant Vogt began giving instructions to Mattson.

l.  Once outside of the gate Mattson was ordered to kneel on the uneven ground, the K9 barking loudly behind Mattson and the armored vehicle running a few yards to his left. Mattson was instructed to lie on his stomach faced away from the police at which point Mattson momentarily removed his left hand from his head and looked towards Defendant Vogt, was told to replace it, and quickly responded. Mattson then removed his right hand, was instructed to replace it, and began to respond accordingly. Although Jeremy Mattson did not exhibit any aggressive or threatening behaviors, Defendant Vogt released his K9 which attacked Mattson's right lower back and abdomen, causing another burning, tearing pain. From the video, it is uncertain whether he just lost control of his K9 or intentionally released him.

   m. The dog was latched onto Jeremy Mattson for approximately 17 seconds until four officers rushed and applied weight on Mattson with their bodies and shields. At all times during the takedown, Mattson was compliant in that he was lying on the ground where the dog continued to attack and bite him. While laying compliant on the ground, one of the officers forcibly hit Jeremy on the side of his head with his knee while the full weight of several officers was on his back and legs. Jeremy Mattson himself was unmoving, on his stomach, compliant, until he was handcuffed and brought to his feet by the officers.

   n. Paramedics were on scene, examined Jeremy Mattson, and began treating his wounds sustained by the dog bites. An officer, presumably Defendant Streibel, walked by the back of the ambulance and, in the presence of the paramedic treating Mattson, said, "Hey, how'd that feel?" When Mattson looked up at the officer, he was holding a long, rifle-like firearm and said with a grin, "When I shot you."

   o. Mattson was then taken to the hospital to be treated for his injuries.

   p. All officers present at the scene in Gem County, Idaho, that afternoon were acting in course and scope of their employment with their respective law enforcement agency.

## COUNT I

### FIRST CLAIM FOR EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

11. That on or about March 14, 2020, in the state of Idaho, Defendant Aron Streibel of the Caldwell City Police Department, while on duty, did use force by firing a round into the person of Jeremy Mattson as a "life check."

12. That the totality of circumstances did not justify the deployment of the round.

13. Said circumstances include that it was reported or known to Defendant Streibel at the time of the shooting:

    a. That while Jeremy Mattson lay prone on his stomach several yards away from his position in apparent sleep, movement was observed.

    b. That there was not a report of a firearm on or near the Jeremy Mattson's person by the observing drone operator.

    c. That there were approximately 15 officers present to apprehend the one suspect (*Mattson).

    d. That there were no other suspects located with Jeremy Mattson.

    e. That Jeremy Mattson's vehicle was parked on the outside of the approximate 15' high chain link fence about 150 feet away.

    f. That no warning, nor verbal commands were given to Jeremy Mattson to wake up or surrender before shooting him.

    g. That officers could have entered the enclosed area from the other side of the radio tower without detection.

    h. That all the officers were positioned on the same side of the enclosed area near the gate and had an unobstructed view of Jeremy Mattson.

    i. That the warrant from Ada County was for failure to appear.

    j. That from the time Defendant Streibel arrived on scene near the radio tower until he shot Jeremy Mattson in the hip area, Mattson did not display any conduct that was threatening, aggressive nor posing a threat of life to himself or others.

    k. That Jeremy Mattson did not attempt to flee or aggress the officers.

    l. That Jeremy Mattson was in fact was unarmed and did not pose a risk of flight.

14. The use of force deployed by Defendant Streibel was excessive, unreasonable and in violation of Jeremy Mattson's rights and privileges against same as guaranteed under the Fourth Amendment of the United States Constitution.

15. That Defendant Streibel was acting under color and authority of law as a law enforcement agent for the City of Caldwell's police department.

16. That Jeremy Mattson suffered damages as a result of the use of force by Defendant Streibel, including but not limited to, bruising, burning pain, pain and suffering,

17. That said conduct alleged in Count I constitutes a violation of Title 42, of the United States Code, Section §1983.

## COUNT II

### SECOND CLAIM FOR EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

18. That on or about March 14, 2020, in the state of Idaho, Defendant DANIEL VOGT of the Canyon County Sheriff's Office, while on duty, did use force by releasing his K9 (police trained dog) to bite the person of Jeremy Mattson.

19. That the totality of circumstances did not justify the release of the police dog.

20. Said circumstances include that it was reported or known to Defendant Vogt at the time of the shooting:

    a. That while Jeremy Mattson lay prone on his stomach several yards away from his position in apparent sleep, movement was observed.

    b. That there was not a report of a firearm on or near the Jeremy Mattson's person by the observing drone operator.

    c. That there were approximately 15 officers present to apprehend the one suspect (*Mattson).

    d. That there were no other suspects located with Jeremy Mattson.

    e. That Jeremy Mattson's vehicle was parked on the outside of the 10-15' chain link fence about 150 feet away.

    f.  That no warning, nor verbal commands were given to Jeremy Mattson to wake up or surrender before Defendant Streibel shot him.

    g.  That upon being shot, Plaintiff Jeremy Mattson began rolling on the ground.

    h.  That all the officers were positioned on the same side of the enclosed area near the gate and had an unobstructed view of Jeremy Mattson.

    i.  That the warrant from Ada County was for failure to appear.

    j.  That from the time Defendant Vogt arrived on scene near the radio tower until he released the K9, Mattson did not display any conduct that was threatening, aggressive nor posing a threat of life to himself or others.

    k.  That Jeremy Mattson did not attempt to flee nor aggress the officers at the scene.

    l.  That Jeremy Mattson was previously compliant and visible observation indicated that he was unarmed before he exited through the gate.

    m.  That the K9 was continuously barking loudly.

    n.  That Jeremy Mattson was unarmed and did not pose a risk of flight.

21. The use of force deployed by Defendant Vogt was excessive, unreasonable and in violation of Jeremy Mattson's rights and privileges against same as guaranteed under the Fourth Amendment of the United States Constitution.

22. That Defendant Vogt was acting under color and authority of law as a law enforcement agent for the Canyon County Sheriff's Office.

23. That Jeremy Mattson suffered damages as a result of the use of force by Defendant Vogt, including but not limited to, torn flesh, puncture wounds, pain and suffering.

24. That said conduct alleged in Count II constitutes a violation of Title 42, of the United States Code, Section §1983.

## COUNT III

### CITY LIABLE UNDER MONELL CLAIMS

25. That the Defendant City of Caldwell is a municipality and political subdivision of the state of Idaho established under Title 50 of the Idaho Code. As such, the City of Caldwell is a "person" subject to suit under Title 42 United State Code §1983.

26. Upon good faith belief, the allegations set forth in Count I related to Defendant Streibel's use of force, by doing a "life check" on Plaintiff, was accomplished by shooting him with a firearm and round issued by the City of Caldwell's Police Department.

27. Review of the City of Caldwell's policy does not reveal nor address the deployment of rounds as a "life check" by its police officers.

28. That either Defendant City of Caldwell, provided weaponry and less lethal loads (munition), without a policy or training on acceptable use and circumstances, or that the City of Caldwell has specific training that prohibited the use alleged but offered no supervision or policy to correct such officer deployment of force.

29. Plaintiff Jeremy Mattson, upon good faith belief, alleged that the damages suffered as alleged in Count I on March 14, 2020, were proximately caused by the City of Caldwell's policy, custom or practice, of failing to properly train and supervise Defendant Streibel, or in the alternative, allowing or permitting Defendant Streibel to customarily use the

excessive force as alleged in Count I, in violation of Plaintiff Jeremy Mattson's constitutionally protected rights and privileges guaranteed under the Fourth Amendment of the United States Constitution and the 14th Amendment Due Process Clause.

30. City of Caldwell's failure is a policy, custom or practice, actionable under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

31. As alleged herein, Defendant City of Caldwell, is liable for the damages alleged and sought including for injuries sustained as a result of Defendant Streibel's actions, pain and suffering.

## PRAYER FOR RELIEF

32. Wherefore, Plaintiff JEREMY MATTSON prays for a Judgment against the Defendants as follows:

    a. Special damages for attorneys fees and costs suffered by Plaintiff for the criminal charges that were consequently dismissed against him in Gem County; including any public defender reimbursement for their time at standard rate.

    b. Special damages for any and all medical expenses incurred as a result of Defendants' conduct; including reimbursement for amounts covered by Medicaid, insurance or for which there may be a subrogated claim from any medical provider, ambulance service, or hospital.

    c. General damages for emotional pain, suffering and humiliation;

    d. For attorneys fees and costs of suit as deemed appropriate by the Court under 42 United States Code §1988.

## RESERVED PLEADINGS

Plaintiff reserves the right to amend to allege issues regarding lack of exterritorial police powers; and to include other Defendants now listed as John Does as their identities and participation in the alleged conduct becomes clear through discovery.

Each law enforcement entity was provided with written Notices to Preserve Evidence in March 2021, to avoid spoliation of evidence and to assert the legal presumptions in favor of Plaintiff if destruction or alteration of the evidence has occurred.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial, a right declared under the Seventh Amendment to the United States Constitution as provided under Federal Rule of Civil Procedure 38.

Dated this 4th day of March, 2022.

SUSAN LYNN MIMURA & ASSOCIATES, PLLC.

By:    SUSAN LYNN MIMURA
       Managing Member
       ATTORNEY FOR PLAINTIFF