UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY MATTSON,<br><br>    Plaintiff,<br><br>v.<br><br>ARON STREIBEL, DANIEL VOGT, CITY OF CALDWELL, and JOHN DOES 1-15,<br><br>    Defendants. | Case No. 1:22-cv-00105-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.  INTRODUCTION

On March 12, 2020, Plaintiff Jeremy Mattson failed to appear at a preliminary hearing and a warrant issued for his arrest.  On March 14, Mattson engaged law enforcement in two separate high-speed car chases.  Subsequently, law enforcement located Mattson lying face down near a cell tower in rural Gem County, Idaho.  When apprehending Mattson, a police officer shot him with a round of less lethal munition, i.e., a sponge round, and another officer released a police canine on Mattson.  Based on this conduct, Mattson sued the officers, Defendants Aron Streibel and Daniel Vogt, and Defendant City of Caldwell under 42 U.S.C. § 1983.  Mattson alleges that Officers Streibel and Vogt used excessive force in violation of the Fourth Amendment and that the City of Caldwell, which is Officer Streibel's employer, failed to properly train Officer Streibel or allowed him "to customarily use" excessive force.

Pending before the Court are:  (1) Plaintiff's Motion for Partial Summary Judgment against Officer Streibel, (2) Defendants' Motion for Summary Judgment, and (3) Plaintiff's Motion for Leave to Amend Complaint to Comport with Discovery and to Include Punitive Damages. (Dkts. 38-40).  The Court finds oral argument would not significantly aid its decision-making process and decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").  For the reasons set forth below, the Court denies Mattson's motion for partial summary judgment, grants Defendants' motion for summary

judgment, and denies as moot Mattson's motion to amend his complaint to allege a claim for punitive damages.

## II.  BACKGROUND

In late February 2020, Mattson was arrested after leading law enforcement in Ada County on two different car chases. (Dkt. 40-1; Ex. A4). Through their encounters with Mattson and later investigations, officers from the Boise Police Department ("BPD") and Ada County Sheriff's Office ("ACSO") learned from Mattson's wife that Mattson was affiliated with the Aryan Knights and Hell's Angels gangs and had access to guns. (*Id.*) Mattson's wife also expressed that she feared Mattson and that he had physically abused her and had threatened her, including threatening to kill her and burn down the house. (*Id.*)

After his initial arrest, Mattson was charged in Ada County with several felony and misdemeanor offenses, including possession of methamphetamine, eluding a peace officer, and concealment of evidence. (*Id.*) Mattson was released on bond, and his next court appearance was set for March 12, 2020. Shortly thereafter, Mattson was charged with additional offenses including domestic violence and intimidating a witness, and a protection order for his wife was entered against Mattson. When Mattson failed to appear in court on March 12, a warrant was issued for his arrest.[1]

The next evening, on March 13, Mattson's wife contacted the ACSO and reported that Mattson and his accomplice, Scott Buss, were planning on carrying out a "hit" and that they would be stopping by her house later that night. (Dkt. 40-1; Ex. A3). Mattson's wife also reported Mattson and Buss were likely armed. (*Id.*) Later that evening, Mattson's wife again contacted the ACSO and reported that Mattson and Buss were at her house and that she and her young son were hiding from them in a closet. (*Id.*) ACSO deputies and police officers with the Meridian Police Department ("MPD") were then dispatched to the house where they set up outside a perimeter during the early hours of March 14. (Dkt. 40-1; Ex. F1).

Soon after, Mattson and Buss left the house in a truck, with Buss driving. (Dkt. 40-1; Ex. A3). Officers pursued them; they sped away; and a car chase ensued. Buss attempted to evade

---

[1]    That Mattson was released on bond, was charged with additional offenses, and failed to appear are all facts included in Defendants' Statement of Facts with citations to exhibits. (Dkt. 40-1, ¶¶ 2-3). The Court has been unable to locate these facts in the record. Publicly available Idaho court records confirm these events, however, and the Court takes judicial notice of these facts. *See* Fed. R. Evid. 201.

law enforcement by driving over 100 m.p.h. without headlights, but the truck eventually ran over a spike strip and crashed into a wall; Mattson and Buss fled on foot; officers located and arrested Buss; but Mattson got away. (*Id.*) In the truck, officers discovered ammunition but did not locate a firearm either on Buss or in the truck. (*Id.* at ¶ 11).

Later that morning, officers used GPS to locate Mattson, who was driving a black sedan he had stolen from his wife. (Dkt. 40-1; Ex. C3). They attempted to pull Mattson over, but he again sped away. (*Id.*) Another car chase ensued involving several law enforcement personnel, including Officer Vogt with the MPD. (Dkt. 40-1; Exs. E1, F1). During this pursuit, Mattson drove at high speeds, at times exceeding 100 m.p.h. and driving into oncoming traffic. (Dkt. 40-1; Ex. C3, E1, F1). To avoid an accident, officers ceased their pursuit of Mattson but continued to track his whereabouts using GPS. (*Id.*; Dkt. 40-1; Ex. C1).

That afternoon, officers tracked the sedan driven by Mattson to a rural cell tower in Gem County. (*Id.*) Multiple law enforcement agencies, including the Idaho State Police ("ISP"), arrived on scene and set up a perimeter some distance away from the cell tower. (Dkt. 40-1; Ex. E1). Using an aerial drone, officers located Mattson near the cell tower in an area enclosed by a chain-link fence. (Dkt. 40, Ex. E2).

Drone footage shows Mattson lying face down and wearing baggy jeans, a white t-shirt, and no shoes. (*Id.*) Initially, officers were unsure whether Mattson was alive and discussed performing a "life check." (Dkt. 40-1; Exs. E1, F1). Later, however, drone footage showed Mattson making slight movements. (Dkt. 40, Ex. E2). Officers then became concerned Mattson was "playing opossum" or hiding and waiting to attack. (Dkt. 40-1; Ex. F1).

The ISP trooper who operated the drone testified he attempted to communicate with Mattson via the drone's speaker but received no response. (Dkt. 40, Ex. G1, at 35:10-41:9). While drone footage indicates the drone was hovering only a few yards over Mattson on several occasions, the footage does not include audio or otherwise indicate Mattson was aware of either the drone or law enforcement's presence. (Dkt. 40, Ex. E2). Instead, Mattson claims that, during this time, he was sleeping and not aware of law enforcement's presence. (Dkt. 40-1, Ex. F3).

While officers were surveilling Mattson, Officer Streibel of the Caldwell Police Department ("CPD") arrived on the scene with an armored vehicle and a sponge-round launcher capable of firing 40-millimeter rounds of less lethal munition made of plastic and foam material, also known as sponge rounds. (Dkt. 40-1). Officer Streibel drove the armored vehicle to the cell

**MEMORANDUM DECISION AND ORDER - 3**

tower, with several police officers following behind, including Officer Vogt with his police canine on a leash. (Dkt. 40, Ex. F3).

Upon arriving at the cell tower, Officer Streibel stationed himself in the turret of the armored vehicle and shot Mattson, who was still lying face down on the ground inside the fenced area approximately twenty yards away, with his sponge-round launcher. (Dkt. 40, Exs. B1, E2). The sponge round hit Mattson's thigh, and Mattson reacted by rolling over in pain and grabbing his leg. (Dkt. 40, Exs. B1, E2). Mattson claims that, at this moment, he woke up and became aware of law enforcement's presence. (Dkt. 38-1, at 7). Officer Streibel then gave Mattson a series of commands, including for Mattson to lift his shirt and turn around so the officers could confirm Mattson had no weapons tucked in his waistband. (Dkt. 40, Exs. B1, B2, E2, F3). Mattson complied with all these commands. (Dkt. 40, Exs. B2, E2). Officer Streibel then ordered Mattson to walk backwards through the gate of the chain-link fence with his hands on his head, and Mattson complied. (Dkt. 40, Ex. B2).

Once Mattson passed through the gate, Officer Vogt instructed Mattson to continue walking backwards. (Dkt. 40, Ex. F3). During this time, Officer Vogt held his police canine on a leash, and it began barking at Mattson. (*Id.*) Once Mattson was within a few yards of the officers, Officer Vogt instructed Mattson to "stop, get down to your knees, cross your feet at the ankles, and keep your hands on your head, don't move!" (*Id.*) Mattson complied and dropped to his knees facing away from Officer Vogt. (*Id.*) Officer Vogt then ordered Mattson to lay down instructing, "All the way down! Flat on your stomach!" (*Id.*) Instead, Mattson looked over his right shoulder and briefly moved his left hand from his head to his waist before returning it to his head. (*Id.*) Officer Vogt again instructed, "Flat on your stomach!" Mattson, however, did not lay down but instead removed his right hand from his head and lowered it toward his waist. (Dkt. 40, Ex. F3). Later, after the incident, Mattson claimed he removed his hands from his head because he was confused by Officer Vogt's commands and was losing his balance. (*Id.*) Conversely, Officer Vogt explained he believed Mattson was being noncompliant and attempting to access a weapon. (Dkt. 40, Ex. F1).

Once Mattson removed his hands from his head the second time, Officer Vogt released his police canine. (Dkt. 40, Ex. F3). The dog tackled and bit Mattson. (*Id.*) Five officers quickly converged on Mattson and handcuffed him. (*Id.*) During this time, the dog continued to bite Mattson for approximately seventeen seconds until Officer Vogt was able to pull the dog away.

(*Id.*)  After Mattson was arrested, he was taken to the hospital by an ambulance.  (*Id.*)  No weapons were ever found on his person, near the cell tower, or in his car.

Mattson sued Officer Streibel, Officer Vogt, and the City of Caldwell under § 1983.  (Dkt. 1).  Mattson alleges Officer Streibel's act of firing a sponge round and Officer Vogt's release of his police canine violated his Fourth Amendment right to be free from the use of excessive force.  (*Id.*).  Further, Mattson alleges the City of Caldwell is liable under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978), for failing to properly train Officer Streibel or for allowing him to use excessive force.  (Dkt. 1).  Following discovery, Mattson moved for partial summary judgment against Officer Streibel and to amend his complaint to allege a claim for punitive damages against all Defendants.  (Dkts. 38, 39).  Defendants have also filed a motion for summary judgment as to all of Mattson's claims.  (Dkt. 40).

### III.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (citation omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment.  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 5**

At the summary judgment stage, the trial court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). When, as here, some of the events were videotaped, the court "view[s] the facts in the light depicted by the videotape." *Smith v. Agdeppa*, 81 F.4th 994, 997 (9th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

When the parties submit cross-motions for summary judgment, the trial court must consider the merits of each motion separately and review the evidence submitted in support of each cross-motion. *See Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Even if both parties assert there are no contested issues of material fact, the court still has the responsibility to independently make that determination. *See id.* (citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)).

## IV. ANALYSIS

### A. Mattson's Failure to Comply with Rule 56(c) and Local Rule 7.1

Mattson has both moved for partial summary judgment against Officer Streibel and opposed Defendants' summary judgment motion. Federal Rule of Civil Procedure 56 requires parties, who are moving for summary judgment or responding to such motions, to submit materials from the record in support of their factual assertions. Specifically, Rule 56(c) provides a party asserting a fact is or is not genuinely disputed must cite "to particular parts of materials *in the record*, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added); *see also* Dist. Idaho Loc. Civ. R. 7.1(c)(1) (requiring responding party to submit affidavits, declarations, photographs, documentary evidence, and other supporting materials with summary judgment response brief). The submission of materials from the record is usually accomplished by counsel (or perhaps a party or another individual with personal knowledge) filing an affidavit or declaration identifying the submitted materials, attaching them as exhibits, and attesting they are true and correct copies. *See id.* at 7.1(b)(1)(2) (requiring filing of affidavits or declarations submitting supporting materials).

Additionally, the parties are required to file separate factual statements on summary judgment. The moving party must file a "*separate* statement of all material facts, not to exceed

MEMORANDUM DECISION AND ORDER - 6

ten (10) pages, which the moving party contends are not in dispute." *Id.* at 7.1(b)(1) (emphasis added). Similarly, the responding party must file "a *separate* statement, not to exceed ten (10) pages, of all material facts which the responding party contends are in dispute." *Id.* at 7.1(c)(2) (emphasis added).[2]

Mattson has not satisfied either of these requirements. He neither submits a statement of facts in support of his motion for partial summary judgment nor in opposition to Defendants' summary judgment motion. Additionally, Mattson has failed to provide, with a few exceptions, any supporting materials for his factual assertions. Instead of submitting materials in the record via an affidavit or declaration, Mattson simply provides footnotes in his briefing quoting portions of the record, citing to that record, but not providing that record for the court's review.[3] The only purportedly supporting materials Mattson provides is the Caldwell Police Department Policy Manual regarding its Use of Force protocols (Dkt. 38-1); a single page from a deposition (Dkt. 45-2); and an apparent incident report (Dkt. 45-3). Rather than submitting these materials via a declaration or affidavit, Mattson improperly attaches them as "exhibits" to his brief. Regardless, these materials fail to support Mattson's many factual assertions.

Because Mattson has failed to comply with the rules of civil procedure governing summary judgment motions, the Court may give him an opportunity to properly support or address the facts, consider the facts undisputed for purposes of ruling on the motions, or grant Defendants summary judgment if their motion and supporting materials shows they are entitled to it. *See* Fed. R. Civ. P. 56(e)(1)-(3). Rather than simply submitting supporting materials in opposition to Defendants' summary judgment motion, Mattson requests the opportunity to supplement his opposition to Defendants' summary judgment motion.[4]

---

[2]  If the parties file cross-motions for summary judgment, each district judge provides guidance about how to consolidate the briefing for cross-motions on the website for the U.S. District Court for the District of Idaho.

[3]  Mattson's briefing contains a "Declaration Under [Idaho Code] § 9-1406" declaring under penalty of perjury under Idaho law that "all quotations and references to deposition transcripts and officer reports are true and correct to the best of [his counsel's] knowledge." This "declaration" is inadequate to satisfy the requirements for the rules of civil procedure.

[4]  Mattson objected to Defendants' briefing as overlength because Defendants' supporting brief is twenty-four pages and their statement of facts is twelve pages. (Dkt. 44). In his objection, Mattson requests that the Court strike Defendants' briefing or, alternatively, that he be allowed to supplement his opposition to Defendants' summary judgment motion. Under the procedural rules,

**MEMORANDUM DECISION AND ORDER - 7**

Even if the Court allowed Mattson to supplement with additional materials from the record, however, Mattson's proposed supplementation would not affect the Court's summary judgment ruling. As explained below, even assuming Officers Streibel and Vogt violated Mattson's constitutional rights, they are still entitled to qualified immunity because Mattson fails to meet his burden of proof that the officers' conduct violated clearly established law at the time of the incident. For this reason, the Court denies Mattson's request to supplement his filings and decides the parties' motions based on the materials currently in the record. *See* Fed. R. Civ. P. 56(c)(3).

B.   **Officers Streibel and Vogt Are Entitled to Qualified Immunity**

Mattson alleges § 1983 claims against Officers Streibel and Vogt, arguing they used excessive force in violation of the Fourth Amendment. Even assuming without deciding that Officers Streibel and Vogt used excessive force to apprehend Mattson, they may still be immune from liability under the doctrine of qualified immunity. Qualified immunity shields government officials from liability unless a plaintiff proves: "(1) that the official violated a statutory or constitutional right, ***and*** (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted) (emphasis added).

When an officer pleads qualified immunity, the plaintiff bears the burden of proving both prongs are satisfied to show the officer is not entitled to immunity. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). Importantly, courts have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Evans v. Skolnik*, 997 F.3d 1060, 1064-65 (9th Cir. 2021). If the second prong is dispositive, courts need not analyze the first. *Pearson*, 555 U.S. at 236-37. Whether a particular right is clearly established is a question of law. *See Morales v. Fry*, 873 F.3d 817, 821-23 (9th Cir. 2017).

In this case, the Court focuses on the second prong—whether the right was clearly established at the time of the challenged conduct—which is dispositive of the parties' summary judgment motions. A clearly established right is one which is sufficiently clear to every reasonable official who would have understood his conduct violated a right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). To be a clearly established right, "a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

---

however, Mattson was allowed to submit an affidavit or declaration attaching any materials he wanted to rely on to oppose summary judgment.

**MEMORANDUM DECISION AND ORDER - 8**

The rule must be settled law, meaning either controlling authority or a robust consensus of persuasive authority dictate the rule. *Id.* That "then-existing precedent" suggests the rule is not enough. *Id.* Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule plaintiff seeks to apply." *Id.*

Additionally, "'[t]he clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quotation omitted). This standard requires a high degree of specificity. *Id.* "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (quotation and brackets omitted). Although a plaintiff does not have to produce "a case directly on point," the "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful. To achieve that kind of notice, the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction.").

In this case, Mattson has failed to meet his burden of proving under the second prong that Officers Streibel and Vogt violated a clearly established right. In opposing the Officers' assertion of qualified immunity, Mattson argues that Officer Streibel used excessive force by "shooting a sleeping man, who is not an active aggressor or attempting to elude, with a less lethal munition, especially without providing a verbal warning" and that Officer Vogt used excessive force by releasing the canine "while Mattson was attempt[ing] to comply with contradictory commands." (Dkt. 45 at pp. 5-6). Even assuming Mattson's factual assertions are correct,[5] Mattson still fails

---

[5] Because the Court assumes Mattson's version of the material facts is correct, the facts he argues are disputed are inapposite, including regarding (1) whether any warning was given prior to shooting Mattson with a sponge round; (2) whether law enforcement shot Mattson with a sponge round prior to performing a "life check"; (3) whether Mattson was attempting to comply with Officer Vogt's orders when he lowered his hand toward his waistband; and (4) the extent to which Mattson was resisting law enforcement prior to being shot with a sponge round. (Dkt. 45 at p. 11 (identifying "disputed" facts)).

**MEMORANDUM DECISION AND ORDER - 9**

to meet his burden because he fails to cite "then-existing precedent" establishing a sufficiently clear foundation for the right. *See Wesby*, 583 U.S. at 63 (stating standard); *see also Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (noting court "can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct"). Indeed, Mattson does not cite any case law in support of his assertion that the officers violated a clearly established right.

Instead, Mattson relies on an exception to the rule that he must either cite controlling authorities or a robust consensus of persuasive authorities to establish his excessive force claim. This exception is sometimes referred to as the "obviousness principle" and provides that, in some instances, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question even though the very action in question has not previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (1997) (internal quotation marks and brackets omitted); *see also Sharp*, 871 F.3d at 912 (noting "this obviousness principle" is "an exception to the specific-case requirement"). The Ninth Circuit has noted, however, that this "exception to the specific-case requirement[] is especially problematic in the Fourth-Amendment context" and that "the obviousness principle has real limits when it comes to the Fourth Amendment." *Sharp*, 871 F.3d at 912. For this reason, the Ninth Circuit has found obvious violations only in rare circumstances with extreme facts. *See, e.g.*, *Waid v. County of Lyon*, 87 F.4th 383, 389 (9th Cir. Nov. 21, 2023) (collecting rare cases of extreme facts).

In this case, Mattson argues the officers' conduct was "so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional." (Dkt. 45 at 9). In support, Mattson cites two cases applying the "obviousness principle": *DeBoer v. Pennington*, 206 F.3d 857 (9th Cir. 2000), *vacated*, 532 U.S. 992, *remanded to* 287 F.3d 748 (9th Cir. 2002), and *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001). Neither case, however, supports Mattson's assertion that the officers' conduct in this case was so extreme that a constitutional violation was obvious. Rather, both cases are distinguishable.

In *Deorle*, the officer observed Deorle, "an emotionally disturbed" person, in close proximity for about five to ten minutes before shooting him in the face using a beanbag gun to subdue him, despite that he "was unarmed, had not attacked or even touched anyone, had generally obeyed the instructions given him by various police officers, and had not committed any serious

offense." *Id.* at 1275, 1281. Unlike *Deorle*, the undisputed facts in this case establish Mattson posed a much greater threat to law enforcement: He had multiple pending criminal charges against him; had failed to appear; was subject to outstanding warrants; had threatened violence; had eluded law enforcement multiple times in high-speed chases, including on the day of the events in question; and was possibly armed and dangerous when he was located lying on the ground in tall grass inside a chain-link enclosure. Mattson does not dispute these facts, which are not extreme facts warranting the application of the obviousness principle. (*See, e.g.,* Dkt. 45 at p. 11 (identifying disputed facts). Moreover, the Supreme Court has already twice cautioned courts to limit *Deorle* to the extreme facts in that case. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018) ("[T]he Court has *already* instructed the Court of Appeals *not* to read its decision in that case too broadly in deciding whether a new set of facts is governed by clearly established law."); *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 614 (2015) ("Whatever the merits of the decision in *Deorle*, the differences between that case and the case before us leap from the page.").

Additionally, *DeBoer* is distinguishable. In that case, the Ninth Circuit addressed "whether city and state officials [were] entitled to qualified immunity for entering city-owned premises and seizing the business and personal records and the personal property of an individual" despite the individual's agreement to make the records available to the city. 206 F.3d at 860. Applying the obviousness principle, the Court resolved this question, concluding "DeBoers' Fourth Amendment right to be free from unreasonable seizure of their business records, equipment and other property was clearly established." *Id.* at 866. *DeBoer*, unlike Mattson's case, does not address an issue of excessive force and, for that reason and others, it is inapposite.

In summary, this Court declines to conclude this case involves "extreme facts" warranting application of the obviousness exception to the specific-case requirement. Because this case does not present an obvious constitutional violation, Mattson was required to show controlling authorities or robust persuasive authorities to establish the second prong of the qualified immunity test, but he failed to do so. Because he failed to cite any authorities, Officers Streibel and Vogt are entitled to qualified immunity, and the Court grants their motion for summary judgment.

### C. Mattson's *Monell* Claim Fails

The City of Caldwell also moves for summary judgment on Mattson's § 1983 claim. A municipality or other local government may be liable under § 1983 only if the governmental body itself violates a person's rights. *See Monell*, 436 U.S. at 692. Municipalities "are not vicariously

liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted). Thus, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691).

A plaintiff seeking to establish municipal liability under *Monell* must prove "that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

Here, Mattson's claim against the City of Caldwell is based on *Monell* and alleges that the City of Caldwell's policies resulted in the violation of his rights. Mattson contends that the CPD has a Use of Force Policy that outlines the use of force, the use of body cameras, and the role of supervisors. Mattson argues the City of Caldwell showed deliberate indifference to his rights because, in his view, it did not follow its own policies and did not properly train or punish Officer Streibel for using a sponge-round launcher. Mattson concludes that these actions by the City of Caldwell contributed to Officer Streibel shooting him with a sponge round.

Even assuming without deciding that Officer Streibel did violate Mattson's rights, Mattson does not satisfy the requirements of *Monell*. First, Mattson has not identified a specific *policy* of the City of Caldwell that caused Officer Streibel to shoot Mattson with a sponge round. Second, there is no evidence in the record connecting the City of Caldwell's policies with Officer Streibel's actions. Instead, Mattson focuses on Officer Streibel's own purported violations of the CPD's Use of Force Policy. For example, Mattson faults Officer Streibel for using force when, in his view, the relevant protocol called for verbal warnings. Even if Mattson is correct that Officer Streibel violated CPD policy, however, the City of Caldwell cannot be vicariously liable merely for its employee's mistakes.

Mattson's other arguments against the City of Caldwell also fail to satisfy the elements of a *Monell* claim. Mattson asserts Officer Streibel's supervisor wrongly characterized the incident *after* it occurred. Once again, even if this assertion were true, it does satisfy the fourth element of

**MEMORANDUM DECISION AND ORDER - 12**

a *Monell* claim because the conduct occurred after the constitutional violation. Finally, Mattson's assertion that the City of Caldwell was deliberately indifferent to his rights because it failed to properly train Officer Streibel also fails. Mattson offers no support for this assertion, and the only evidence in the record indicates the CPD did provide training to Officer Streibel regarding the use of a sponge-round launcher. (Dkt. 40, Ex. G2, 51:9-53:20). Accordingly the record does not support Mattson's failure-to-train argument.

Because Mattson's argument and the record do not establish genuinely disputed factual questions that the City of Caldwell is liable under *Monell*, the Court grants Defendants' motion for summary judgment on Mattson's claim against the City of Caldwell.

### D. Motion to Amend

Mattson moves to amend his claim to assert a punitive damage claim asserting that Defendants "outrageously and maliciously exercised unnecessary excessive force" against him and were recklessly indifferent to his constitutional rights. (Dkt 39-1). Because Mattson's claim fails on summary judgment, however, any amendment to add a punitive damage claim is futile. *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (considering futility as factor). Accordingly, the Court denies Mattson's motion to amend as moot.

## V. ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 38) is **DENIED**;
2. Plaintiff's Motion for Leave to Amend Complaint to Comport with Discovery and Include Punitive Damages (Dkt. 39) is **DENIED AS MOOT**; and
3. Defendants' Motion for Summary Judgment (Dkt. 40) is **GRANTED**.

DATED: December 20, 2023

Amanda K. Brailsford
U.S. District Court Judge